THE EAST ST. LOUIS CONNECTING RAILWAY COMPANY

*v.*

THE EAST ST. LOUIS UNION RAILWAY COMPANY.

*Filed at Springfield Oct. 1, 1883—Rehearing denied January Term, 1884.*

1. RAILROAD FRANCHISE—*not an exclusive right—competing lines allowable.* The mere grant of the right to build a railroad between given termini creates no implied obligation by the State to not thereafter grant the right to build other railroads parallel with it between the same termini; nor does it imply an obligation on behalf of the State that other railroads, with their tracks and switches, shall not thereafter be granted the right to cross the State in a different direction, and thus pass over its tracks and switches.

2. The public welfare requires that the business of carrying shall be open to competition, as far as possible, and no monopoly in that regard, however limited the sphere of its operation, can be presumed to have been intended by the legislature in the enactment of the general law for the formation of railroad corporations.

3. Under the laws of this State a railway corporation already organized and operating its road can not enjoin another such corporation, organized under the same general Railroad act, from building a rival road between the same termini, and parallel with the track of the former, for the transaction of the same business, although its main and lateral tracks and switches may be intersected and crossed by the proposed new road, no continuous portion of its track being sought to be taken. The fact that the construction of the new road may damage the business of the old one, and cause delay in operating its trains, affords no ground for enjoining proceedings to condemn for a right of way by the new corporation. Legal damages assessed as is provided by law will afford the old company an adequate remedy for all the injury it may sustain.

APPEAL from the Circuit Court of St. Clair county; the Hon. AMOS WATTS, Judge, presiding.

This was a bill in chancery for an injunction, by the East St. Louis Connecting Railway Company, against the East St. Louis Union Railway Company. The bill was filed in the City Court of East St. Louis, and a temporary injunction was thereupon granted. Subsequently, the venue was changed to the circuit court of St. Clair county, and on a final hearing

that court dissolved the temporary injunction and dismissed the bill.    This appeal is from that decree.

It is alleged in the bill that the complainant, on the 26th of December, 1877, duly organized under the general law of the State as a railroad corporation, for the purpose of constructing and operating a single or double track railroad from Venice, in Madison county, to the Illinois and St. Louis Railroad Company's dyke, in St. Clair county, with lateral tracks connecting with the various railroad tracks, elevators, mills, stock yards, river transfer tracks and landings, between said points, that now are or hereafter may be constructed; that the city of East St. Louis, on the 5th of August, 1878, granted said company, by ordinance, the right of way along Front street, with lateral tracks across the same; that on the 8th of October, 1878, on petition of the owners of three-fourths of the real estate fronting on said Front street, the said city, by ordinance, granted additional privilege to complainant on said street; that the complainant, at an expense of more than $100,000, constructed its main tracks and lateral tracks, connecting its main tracks with the various railroads and depots, elevators, car ferry landings, and mills, as shown in a plat which is made an exhibit to the bill, and has been for several years transacting a general carrying and transfer business for the divers railroads, elevators, ferry landings and warehouses abutting upon and adjacent to Front street, over its main tracks and the lateral tracks connecting therewith, transferring on an average 13,000 cars a month, realizing large sums of money therefor, all of which transferring is necessarily done over the lateral tracks upon Front street, and that without the use of the lateral tracks, or if there is a substantial destruction of their usefulness by obstructions, the business of complainant would be almost wholly lost and destroyed, and said railroad, and the value thereof, destroyed; that on the 2d day of December, 1882, the city of East St. Louis passed an ordinance purporting to

grant the right of way in Front street, together with lateral tracks across the same, to the defendant, which ordinance is made an exhibit to the bill, and alleged to be void; that on the 24th of June, 1882, the East St. Louis Union Railway Company filed articles purporting to incorporate the same as a railroad corporation, in the recorder's office of St. Clair county, Illinois, for the purpose of constructing and operating a single or double track railroad from the north end of Front street, in the city of East St. Louis, St. Clair county, Illinois, beginning at a point in said street one hundred and fifty feet north of Spring street, to a point one hundred and eighty feet south of Trendly street, in the city of East St. Louis, county aforesaid, with lateral tracks connecting the main tracks with the various railroad tracks, elevators, warehouses, stock yard, river transfer tracks and landings, between said points, that now are or hereafter may be constructed; that on the 22d day of December, 1882, the East St. Louis Union Railway Company presented its petition to the county judge of St. Clair county, against the complainant, (who set the time for the hearing thereof January 8, 1883,) for the condemnation of the right to cross the lateral tracks of complainant between the northern end of Front street and Bogy street, alleging therein that there were twelve such tracks, whereas there are eighteen; that the said Union railway threatens to follow such condemnation by condemnation across the other lateral tracks of complainant, and will at once condemn and take possession of said tracks and construct crossings over the same, unless restrained; that the location of the Union railway, as shown by the aforesaid plat, passes over the switches and frogs of seven of the lateral tracks mentioned in the condemnation proceedings, and that the construction of the crossings as located will utterly destroy said switches and entirely prevent the use of said seven lateral tracks; that its lateral tracks are indispensably necessary to the use and operation of the East St. Louis Connecting

railway and the carrying on of its business; that the construction and operation of the East St. Louis Union railway over the lateral tracks of complainant, as proposed in the location of its road, and described in its said condemnation proceedings, as shown by the plat filed herewith, will render it impracticable for complainant to carry on its business and exercise its rights and franchises as a railroad corporation, and will be a substantial destruction of its property and franchises, and not for another and different or higher use, and will work an irreparable injury to complainant. The prayer is that the defendant may temporarily be restrained from proceeding with said condemnation proceedings, and from making said crossings over said lateral tracks, and that upon a final hearing the injunction be made perpetual.

The answer denies the organization of the complainant as a railroad corporation, as alleged in the bill, and says that it is not a corporation *de jure;* admits the passage of ordinances Nos. 315 and 319; that persons acting under the name of the East St. Louis Connecting Railway Company did build certain main tracks and lateral tracks on Front street, in East St. Louis, but denies that it cost $100,000 so to do; that said persons, under the name of the East St. Louis Connecting Railway Company, have been doing a large business on Front street, transferring cars, etc., but states the fact to be that the facilities of said persons are not sufficient for doing all the business which the public demands require to be done on said street; admits the passage of ordinance No. 378 by the city council of East St. Louis, but denies that it is null and void; alleges that the defendant is a railroad corporation duly organized by virtue of the act of March 1, 1882, and is desirous, without delay, to construct and put in operation its railroad, and that it attempted to acquire from complainant, or persons acting under the name of complainant, the right to cross certain lateral tracks which they had built on Front street, in East St. Louis, but was unable to acquire the right

so to do, and thereupon filed its petition for condemnation thereof in the county court of St. Clair county; denies that the construction and operation of the railroad of the East St. Louis Union Railway Company over the lateral tracks of complainant, as proposed in the location of its road, and described in said condemnation proceedings, will render it impracticable for complainant to carry on its business and exercise its franchise as a railroad corporation, and will be a substantial destruction of its property and franchises, and denies that such operation and construction of the railroad of defendant will work an irreparable injury to the complainant.

The cause was heard on bill, answers and proofs. The errors assigned bring before this court the question of the correctness of the rulings of the court below in dissolving the injunction and dismissing the bill.

Mr. R. A. Halbert, for the appellant:

The appellant's attorney believes that the cases of *Central City Horse Ry. Co.* v. *Fort Clark Horse Ry. Co.* 81 Ill. 523, and *Lake Shore and Michigan Southern Ry. Co.* v. *Chicago and Western Indiana R. R. Co.* 97 Ill. 506, taken together and examined in the light of reason, certainly sustain the position of appellant as presented by this record. He cites, to sustain his views in that regard, Pierce on American Railroad Law, pages 154–158, and the cases cited in the notes.

Messrs. G. & G. A. Koerner, for the appellee:

It is no objection that the building of a new road will practically destroy some switch-rails and frogs, or will require some switches to be changed. *Lake Shore and Michigan Southern Ry. Co.* v. *Chicago and Western Indiana R. R. Co.* 97 Ill. 506; *Chicago and Alton R. R. Co.* v. *Joliet, Lockport and Aurora Ry. Co.* 105 id. 408.

The complainant in this bill seems to think that its corporate grant, being anterior to that of defendant, is exclusive in its character. By its terms it is not. But were it so expressed, the power to take the franchise upon making compensation still exists. 1 Redfield on Railways, (4th ed.) page 257.

The legislature may, in all instances, determine when and where the public necessities require additional facilities, of a similar or analogous character, when the former grant is not exclusive. *Charles River Bridge Co.* v. *Warren Bridge Co.* 11 Pet. 426; *Hudson and Delaware Canal Co.* v. *New York and Erie Ry. Co.* 9 Paige, 323.

This court has in strong terms approved of the doctrine, to the extent that the authority to construct a public thoroughfare, and the exclusive right to levy and collect tolls for passing over it, conferred no exclusive right in the line of travel which it was designed to accommodate, and that the legislature might authorize the construction of a rival thoroughfare for the accommodation of the same line of travel, although the effect might be not only to diminish the revenues, but absolutely to destroy the value of the first. *Board of Trustees Illinois and Michigan Canal* v. *Chicago and Rock Island R. R. Co.* 14 Ill. 314.

We may refer also to the same doctrine approved in *Matter of Kerr*, 42 Barb. 119; *B. and L. Ry. Co.* v. *Salem and L. Ry. Co.* 2 Gray, 1.

The corporate franchise of one railway may be taken for the construction of another. *Richmond Ry. Co.* v. *Louisa Ry. Co.* 13 How. 81; *Newcastle R. R. Co.* v. *P. and Ind. R. R. Co.* 3 Ind. 464.

The case at bar is one where one corporation seeks to prevent the building of a rival road by enjoining it from crossing its lateral tracks. Under the authorities cited the rival road might greatly impair, or even utterly destroy, the franchise of the present road, upon making compensation. *City Horse*

*Ry. Co.* v. *Fort Clark Horse Ry. Co.* 81 Ill. 523, and the other authorities cited by appellant, are strong arguments against him.

Mr. Justice Scholfield delivered the opinion of the Court:

The purpose of the incorporation of appellant and appellee is the same,—that of transferring cars from one railroad to another, from the several railroads to the stock yards, and to the elevators, mills, warehouses and ferries accessible, and from these back again to the several railroads. They are incorporated under the same general law, and both have the requisite municipal authority for laying their tracks in the street. The main track of appellee does not cross that of appellant, but it lies within a few feet of it, and extends parallel with it, and crosses some of appellant's lateral tracks and switches, etc., and some of the lateral tracks and switches which it will be necessary for appellee to construct and operate will cross the main track of appellant, and, perhaps, also some of its lateral tracks and switches. No continuous portion of appellant's main track is taken and sought to be condemned, but crossings of and for lateral tracks and switches are alone the subject of the taking and condemnation prayed to be enjoined.

The evidence, when fairly considered, fails to sustain the allegation in the bill that the construction and operation of appellee's railway over the lateral tracks of appellant, as proposed in the proceedings for condemnation, will render it impracticable for appellant to carry on its business and exercise its rights and franchises as a railroad corporation, and be a substantial destruction of its property and franchise. It does, however, show that appellant will be seriously hindered in the operation of its tracks, switches, etc., by the operation of appellee's tracks and switches at the same time, and that this will greatly detract from the profits of its business, and depreciate the value of its property. In principle the

case is simply one wherein one competing road is delayed in the movement of its trains by stoppages rendered necessary by crossing the tracks and switches of another, when no grant involving a contract not to be thus delayed exists, and no priority of right in that regard is otherwise shown. The mere grant of the right to build a railroad between given termini creates no implied obligation by the State to not thereafter grant the right to build other railroads parallel with it between the same termini. (*Charles River Bridge Co.* v. *Warren Bridge Co.* 11 Pet. 420; *Hudson and Delaware Canal Co.* v. *New York and Erie R. R. Co.* 9 Paige, 323; *Illinois and Michigan Canal* v. *Chicago and Rock Island R. R. Co.* 14 Ill. 314.) Nor does it imply an obligation on behalf of the State that other railroads, with their tracks and switches, shall not thereafter be granted the right to cross the State in a different direction, and thus pass over its tracks and switches. (*Chicago and Alton R. R. Co.* v. *Joliet, Lockport and Aurora Ry. Co.* 105 Ill. 388.) The public welfare especially requires that the business of carrying shall be open to competition as far as possible, and no monopoly in that regard, however limited the sphere of its operation, can be presumed to have been intended by the legislature in the enactment of the general law for the formation of railroad corporations. When appellant organized as a corporation and built its road, it was charged with the knowledge that other companies had the right thereafter to organize and build and operate their roads, precisely as appellee has organized and is seeking to build its road. The probability was within reasonable contemplation, and appellant's stockholders acted with their eyes open, and took their chances of this kind of competition.

In *Lake Shore and Michigan Southern Ry. Co.* v. *Chicago and Western Indiana R. R. Co.* 97 Ill. 506, where a crossing by one railroad over the switches of another was sought to be enforced, at page 523, in speaking of the statute under

which these companies organized, and the general law in relation to eminent domain, it was said: "It seems plain, taking these two statutes together, that the General Assembly intended to leave not only the question of whether the taking of any given property for any given purpose named in the Railroad act would be of such public use as to warrant the taking thereof, upon just compensation, without the consent of the owner, to be solved by the all-pervading laws of trade and commerce, but also to leave the question of the place and manner of such taking to be controlled upon the same principles. They are both left to the determination of the railroad company seeking the same, under the limitation that full compensation therefor must be made by such corporation. The legislative declaration assumes that no such corporation can afford to incur the necessary cost in this regard for a work that will not prove profitable, and hence not needed for public use, or to thus take for such work property not needed therefor, especially as property rights so acquired, though fully paid for, can not be made available for any other purpose without forfeiture of all title to the same. The security against a wanton and arbitrary exercise of this power upon mere whim or caprice, and that in all cases the point and manner of taking the land selected will be that least injurious to the owner and yet suited to the public necessity, is found in the fact that such corporations will be induced by considerations of their own best interest to select, in making such crossings, that practical place and that practical mode which will be the least detrimental to the owner, because the corporation so selecting is required by law to make to the owner full compensation, and the more injurious to the owner the place selected and the mode chosen, the greater will be the amount of necessary compensation to be paid."

Counsel for appellant, with seeming confidence, relies upon the decision in *Central City Horse Ry. Co.* v. *Fort Clark Horse Ry. Co.* 81 Ill. 523, and to some of the language used by the

18—1C8 Ill.

judge in argument in delivering the opinion of the court in *Lake Shore and Michigan Southern Ry. Co.* v. *Chicago and Western Indiana R. R. Co. supra.* In the first named case, one horse railway company was seeking to appropriate and condemn the central part of the track and fixtures, or substantially that, of a rival horse railway company, leaving the ends unaffected, and it was held this was a substantial destruction of the railway, and could not, therefore, be tolerated. But we have seen, here, there is no appropriation of, or offer to condemn, any continuous part of appellant's main track, but the purpose is merely to take and condemn crossings of and for lateral tracks and switches,—the very thing that was held allowable in the last named case. The language in the opinion in the last named case, to which reference is made, is this: "To warrant the taking of the property of one party already appropriated to a public use, and placing it wholly or in part in the hands of another party for a public use, it is essential that the new use be a different use, and also that the change from the present use to the new use shall be for the benefit of the public." This was merely introductory to the main discussion, and, as is therein shown, not vital to the question at issue. Still, regarding it as an authoritative enunciation of a legal principle, it is just as obvious here as it was there, that the use of a railroad track for the mere purpose of crossing it is not the same as the use of it for the transportation of trains from one point to another along its line. This use takes no property from one party to give to another, but gives the one simply a limited easement in the property of the other, to be enjoyed in conjunction with the equal right of user of the other.

We see no cause to disturb the decree below. Legal damages, assessed as provided by law, will afford appellant an adequate remedy for all it will suffer by the acts of appellee. There is no ground for an injunction.

The decree is affirmed.         *Decree affirmed.*