# The Chicago and Northwestern Railway Company

*v.*

# The City of Chicago.

*Filed at Ottawa, June 19, 1894.*

1. Eminent Domain—*condemnation of railroad for a street—right of city and the railway company*. By the condemnation of a strip of land across a railway right-of-way and railroad tracks, the city acquires an easement only in the street extended, and the right of the railway company to use its tracks for the passage of trains will exist as before enjoyed, subject only to the easement in the public. Each will have the right to the use of the land condemned for the street, subject to the right of the other.

2. The railroad company will retain the right to operate its trains over and across the street, to the same extent and with the same limitations that it enjoys such right at public street crossings; and the public will have the same right to the use and enjoyment of the street, when extended across the railroad lands, that it has to the use of streets at railway crossings. And these rights will be subject to like police regulations as at other crossings. It is erroneous to say, that either the public or the railway company has a dominant right, or that either takes or holds subject to the right of possession, use or enjoyment by the other. The rights, for the respective purposes, co-exist. Anything to be found in former decisions, intimating a contrary holding, is to be disregarded.

3. Same—*right of railroad in land condemned for a street*. The use of railroad land condemned for a street, for other purposes than the operation of its trains by the railway company, such as storing cars thereon and the like, will necessarily be inconsistent with the right of user in the public, and the right to such other use will cease to exist; and to that extent the company will be deprived of the use of its land as it has theretofore enjoyed the same.

4. Same—*equitable relief*. The fact that damages will accrue to a railway company, by reason of the taking of a part of its right-of-way, etc., will constitute no proper ground for the interposition of a court of equity to enjoin a proceeding at law to condemn. Private property can not be taken or damaged for public use without just compensation for property taken, and for damages to property not taken, and these may be recovered in the proceeding to condemn; and there being a complete and adequate remedy at law, a court of equity has no jurisdiction to interfere.

5. SAME—*taking of property already devoted to a public use.* To authorize a municipality in taking for a public use land already devoted to another public use, the legislative intent to grant the authority must be shown by clear and express language, or by necessary implication from the words of the grant. The grant of power to a city "to lay out, establish, open, alter, widen, extend, grade, pave, or otherwise to improve streets, will not authorize the taking of property already devoted to a public use.

6. The City of Chicago, under paragraph 89, of section 7, of article 5, of the City and Village act, has the power to condemn for a public street, land already devoted to a public use for railroad purposes. Such paragraph expressly authorizes the extension of streets by condemnation or otherwise by the city authorities over and across railroad tracks, right-of-way and land of railroad companies.

APPEAL from the Superior Court of Cook County; the Hon. HENRY M. SHEPARD, Judge, presiding.

This was a bill in chancery, in the Superior Court of Cook county, brought by appellant, to enjoin the City of Chicago from prosecuting condemnation proceedings for opening and extending St. Louis and Halman avenues, in said city, across the right-of-way, tracks and railroad yard of appellant.

The bill alleges, that appellant, many years before, became the owner of the land for railway purposes, and for the construction of tracks thereon, as a railroad yard, for the storage and switching of cars, the making up of trains, as well as for the transit of trains westward from Chicago; that said railroad yard consists of eight tracks, two of which are main tracks, and the others yard tracks, and that the transaction of its business as a common carrier requires the continual passage of locomotives and cars over said tracks, and the continual use of the same. Alleges the adoption of ordinances by the city council of Chicago, one of May 9, 1889, and the other of September 23, 1889, ordering the extension of St. Louis and Halman avenues respectively across said right-of-way and tracks of appellant, by condemning land necessary therefor, etc., and that, in

pursuance of said ordinances, condemnation proceedings. have been instituted, etc.    Alleges, that the opening of said streets, as aforesaid, is not necessary for the accommodation of the public; that the effect will be to deprive appellant of the special use to which it has put its said land, limit its use to the passage of regular trains only, and destroy such ground for the uses of a railroad yard, and the storage and switching of cars.    Prays injunction of such condemnation proceedings by the city, etc., and that same. be made perpetual.

The answer of the defendant, after admitting various allegations of the bill, denies that complainant will be deprived of the use to which it has devoted said property, or its right or title therein, and that, if it was deprived of such use, etc., complainant has an adequate remedy at law, etc.; that the proposed street crossing will not disturb said main or side tracks, or interfere with the use thereof by complainant, etc., and sets up, that under and by virtue of the Cities and Villages act, the city is authorized to extend its streets, by condemnation proceeding, across any railroad track, right-of-way or land, of any railroad company, within. the corporate limits, etc.

Trial was had on bill, answer and replication, stipulation of parties and proofs, and a decree entered January 8, 1891, dismissing the bill for want of equity.    It appeared, that the railway company acquired lands from California. avenue to West Forty-second street.    At each end of this territory considerable bodies of land were purchased by the railway company, that at the west end consisting of two hundred and forty acres.    Connecting these two bodies of land is a strip one hundred feet in width, which is entirely filled. with tracks.    Although this strip of land is but one hundred feet wide, and of the width frequently used for mere. right-of-way, this strip has been used for other purposes. than the main tracks and the passage of trains..    It was acquired for other purposes, viz.:  for the storage and switch-

ing of trains, and constitutes what is known as a railway yard. There are eight of these tracks. The fourth, counting from the north, is used for passenger trains bound east, and the fifth, for passenger trains bound west. Freight trains make use of the second' track, counting from the north, for east bound business, and the third track for west bound business. These tracks are used not only for trains coming on the Galena Division to Chicago, but also from the northwest on the Wisconsin Division, the latter tracks being connected just east of West Fortieth street. These tracks are connected by switches, by means of which cars are sent from one track to the other, and trains are broken up and sent on the tracks of the company to where destined. The north track for the entire distance between West Fortieth street and Sacramento avenue is daily filled with standing cars. It is contended, that the uses to which this strip of land is put are such as to constitute, in railroad language, a railroad yard, as contradistinguished from a mere right-of-way.

To reverse said decree, the complainant below appeals.

Mr. W. C. GOUDY for the appellant:

The city council could not open a street across ground belonging to a railway company appropriated and used for a depot or station ground or railroad yard, without clear express authority from the legislature. Mills on Eminent Domain, sec. 46.

To take property already devoted to another public use, the act of the legislature must show the intent so to do by clear and express terms, or by necessary implication, leaving no doubt or uncertainty respecting the intent. *State* v. *Noyes*, 47 Me. 189; *Worcester R. R.* v. *Com'rs*, 118 Mass. 561; *Bridgeport* v. *N. Y. R. R.*, 36 Conn. 255; *Matter of Ninth Avenue*, 45 N. Y. 729; *Hickox* v. *Hine*, 23 Ohio St. 523; *Balt. R. R.* v. *North*, 103 Ind. 486; *Wood* v. *Macon R. R.*, 68 Ga. 539; *R. R. Co.* v. *R. R.*

*Co.*, 17 W. Va. 812; *Sugar Co.* v. *Elevator Co.*, 82 Mo. 121; *Barber* v. *Andover*, 8 N. H. 398; *West Boston Bridge* v. *Middlesex*, 10 Pick. 247.

Under a general act authorizing the laying out of a turnpike, such turnpike could not be laid out the whole length of a railroad. *Bridgeport* v. *N. Y. R. R.*, 36 Conn. 255. A general authority to lay out a railroad does not authorize a location over land already devoted to another railroad or public use. * * * General authority delegated to a city council can not be exercised in the condemnation of property of the State devoted to public purposes: *Mayor* v. *Central R. R.*, 53 Ga. 120. * * * Lands held for purposes of public parks: *In re Boston R. R.*, 53 N. Y. 574; reservoirs: *State* v. *Mont Clair Ry.*, 35 N. J. L. 328; or institutions for the blind can not be taken for railroad purposes, even though the railroad company was authorized to take for its route all lands necessary belonging to the State: *St. Louis R. R.* v. *Blind Institution*, 43 Ill. 303.

Where the use for which the condemnation is prosecuted is of such a character as necessarily to require for its enjoyment the exclusive possession and use of the premises, the condemnation will be futile, unless it may operate to extinguish the right of the corporation whose title is condemned. The power to invade the privileges of a corporation in such a manner will not be inferred from a naked grant of the power to condemn. *New Jersey R. R.* v. *Long Br. Comrs.*, 39 N. J. L. 28. * * * "A general authority to lay out streets and alleys will not justify the laying out of a street across depot grounds when the easement of the railroad company and of the city can not reasonably co-exist." *Milwaukee R. R.* v. *Faribault*, 23 Minn. 167; *Prospect Park R. R.* v. *Williamson*, 91 N. Y. 552.

The law seems to be well settled, that lands once taken for a public use can not, under general laws, without an express act of the legislature for that purpose, be appropri-

ated by proceedings *in invitum* to a different public use. The legislature, as the supreme and sovereign power of the State, may doubtless interfere with property held by a corporation for one purpose and apply it to another; but the legislative intention so to do must be stated in clear and express terms, or must appear from necessary implication. *Re Buffalo*, 68 N. Y. 167; *Re B. & O. R. R. Co.*, 53 N. Y. 574; *Prospect Park, etc., R. R. Co. v. Williamson*, 91 N. Y. 552.

"A legislative intent to subject lands devoted to a public use already in exercise, to one which might thereafter arise, will not be implied from a grant of power, made in general terms as in our drainage laws, without special reference to an existing necessity for the subsequent use, where, as in this case, it appears that both uses can not stand together, and the latter, if exercised, must greatly endanger if it do not destroy the exercise of the former use." *Central City Horse Ry. Co. v. Fort Clark Horse Ry. Co.*, 81 Ill. 523.

Mr. Jonas Hutchinson and Mr. Morris St. P. Thomas, for the appellee:

A court of equity has no jurisdiction to grant the relief asked, because appellant has an adequate remedy at law in the condemnation proceedings sought to be enjoined.

It is an elementary proposition, for which authorities are not needed, that a party having an adequate legal remedy can not maintain a bill for an injunction.

"A bill in equity will not lie to enjoin proceedings for condemnation, for the reason that the mere taking of such proceedings does no injury to property, and for the further reason that the grounds relied upon for an injunction may be urged in defense of the proceedings." Lewis on Em. Domain, sec. 646; 2 Dillon on Mun. Cor. (3d Ed.), 611; *L. S. & M. S. Ry. Co. v. C. & W. I. R. R. Co.*, 96 Ill.

23—151 Ill.

125; *Winkler* v. *Winkler*, 40 id. 179; *Dickerson* v. *Comrs. of Highways*, 18 Ill. App. 88.

If the city is seeking to appropriate property not authorized by its charter, the court in which the condemnation proceedings are pending will dismiss the petitions on motion, and thereby appellant can secure all it is seeking in this suit. *C. & N. W. Ry. Co.* v. *C. & E. R. R. Co.*, 112 Ill. 589; *I. C. R. R. Co.* v. *C., B. & N. R. R. Co.*, 122 id. 473.

The power to take private property for public use belongs to and is inherent in every independent government. It is an incident of sovereignty, and requires no constitutional recognition. Mills on Eminent Domain, sec. 1; *United States* v. *Jones*, 109 U. S. 513; *Mississippi & Rum River Boom Co.* v. *Patterson*, 98 U. S. 403.

"Every railroad corporation takes its right-of-way subject to the right of the public to have other roads, both common highways and railways, constructed across its track, whenever the public exigency demands it." 6 Am. & Eng. Encl. of Law (Tit. "Eminent Domain"), 537, citing *East St. L. C. R. Co.* v. *East St. L. U. R. Co.*, 108 Ill. 265; *Chicago & A. R. R. Co.* v. *Joliet L. & A. R. R. Co.*, 105 id. 389.

Mr. Justice Shope delivered the opinion of the Court:

Very many of the questions discussed by counsel, and insisted upon as ground for reversal, have been determined adversely to the contention of appellant in *I. C. R. R. Co.* v. *City of Chicago*, 138 Ill. 453; *C. & N. W. Ry. Co.* v. *City of Chicago*, 140 id. 309; *I. C. R. R. Co.* v. *City of Chicago*, 141 id. 586, and other cases, and need not be here again considered.

By virtue of condemnation, the city could acquire an easement only in the street extended, and the right of appellant to use its tracks for the passage of trains would exist as theretofore enjoyed, subject only to the easement

in the public. Each would have the right to the use of the strip of ground condemned for the street, subject to the right of the other, the railroad retaining the right to operate its trains over and across the street, to the same extent and with the same limitations that it enjoys such right at public street crossings, and the public having the same right to the use and enjoyment of the street, when extended across the railroad lands, that it has to the use of streets at railway crossings. In other words, the right of the public in the street being established under the ordinances of the city, the rights of the public and of the railway company would be the same, and subject to the same restrictions and limitations as such rights are enjoyed at the crossings of public streets by railways. As said in *Ill. Cent. Ry. Co.* v. *Chicago*, 138 Ill. 453, it manifestly was intended by the legislature, that the tract to be condemned for the extension of the street over and across railroads, railroad rights-of-way and lands, should be subject to the joint use by the railroad in the exercise of its franchise, and by the public as a street. These rights to its use and occupancy co-exist—the city, for the use of the public, acquiring the right to extend and open the street over and across the railroad and the railroad right-of-way, and thereafter to maintain and keep the same in repair, subject only to its joint use by the railroad; and the railroad, retaining the right to use and occupy the same for the legitimate and reasonable management and operation of its railroad and transaction of its business, subject to all lawful rules and regulations applicable to public street crossings.

The holding there was, that each took and held, subject to the joint use by the other, for the respective purposes to which the land is devoted. It is manifest, that the railway company and the public will possess the same rights, and none other, at the proposed crossings, that are possessed by each at street and railway crossings generally,

within the same jurisdiction.    And these rights will be subject to like police regulation as at other crossings.    It is, therefore, erroneous to say, that either has a dominant right, or that either takes or holds subject to the right of possession, use or enjoyment by the other. · The rights, for the respective purposes, co-exist.    Anything to be found in cases in this court, intimating a contrary holding, is to be disregarded.

The use of the land for other purposes than the operation of its trains, however, such as storing cars thereon, and the like, would be necessarily inconsistent with the right of user in the public.    And in the nature of things the right of the railway company to store cars upon its tracks on the land condemned, and thereby obstruct the use of the street by the public, could not exist.    And the railway company would be necessarily deprived of the use of its land as it had theretofore enjoyed the same.

But if it be conceded that damages will accrue to the railway company by reason thereof, it will constitute no proper ground for the interposition of a court of equity. Private property can not be taken or damaged for public use without just compensation, for the property taken and for damages to property not taken.    And it will be entirely proper for the railway company to recover such damages as will be compensation for the land taken, and for damages to its property not taken, by the opening of the street, as shall be just, in the condemnation proceeding. *L. S. & M. S. R. R. Co. et al.* v. *C. & W. I. R. R. Co.*, 96 Ill. 125; *I. C. R. R. Co.* v. *Chicago,* 138 id. 453. There being a complete and adequate remedy at law, a court of equity properly refused to take cognizance, and the order dismissing the bill was properly entered.

It is, however, insisted, that the bill should be maintained for the reason that there is an attempted appropriation of the railway company's property without authority of law, and that injunction is the appropriate. remedy in such cases

where the land is already appropriated to a specific public use.

The particular ground of contention is, that the strip of land sought to be condemned had been devoted to the specific public use of a railroad yard. A railroad yard is a tract of ground upon which are railroad tracks, used for the purpose of receiving and storing cars when not in use, or used for the purpose of switching, in the distribution of cars and engines to other places, and in the making up of trains. As shown by the foregoing statement, there were upon the hundred foot strip, at the point of the proposed street crossings, eight parallel railway tracks, connected by switches. Two were used for passenger trains, two for freight trains, and the others for such use as the convenience of the company demanded in the switching and storing of cars.

It is insisted, that there is no express authority given by the legislature to the city to open streets across the land in question.

It seems to be well settled, that to authorize the taking by the municipality, for a public use, land already devoted to another public use, the legislative intent to grant the authority must be shown by clear and express language, or by necessary implication from the words of the grant. Mills on Em. Dom., sec. 46.

The City of Chicago was organized under the general act of 1872, for the incorporation of cities and villages. By paragraph 7, section 1, article 5, of that act, it was given power "to lay out, to establish, open, alter, widen, extend, grade, pave, or otherwise improve streets," etc., and it may be conceded, under the authorities, that this general power to extend, establish and open streets, would not authorize the taking of property already devoted to a public use. But by the 89th paragraph of the same section it is provided that: "The city council shall have power, by condemnation or otherwise, to extend any street, alley or

highway over or across  *  *  any railroad track, right-of-way or land of any railroad company within the corporate limits,'' etc.   And we have repeatedly held, that this is express authority for the extension of streets, by condemnation or otherwise, by the city authorities over and across such tracks, rights-of-way and lands of railroad companies.  *I. C. R. R. Co.* v. *Chicago,* 141 Ill. 586; *C. & N. W. Ry. Co.* v. *Chicago, supra; I. C. R. R. Co.* v. *Chicago,* 138 Ill. 453.

It is contended, however, that the terms, ''right-of-way,'' ''tracks,'' and ''land,'' as used in the 89th paragraph, apply only to such right-of-way, tracks and land as is appropriated to the active operation of the company's railway, and that they do not apply to tracks or land devoted to the purposes of a railroad yard.  The attempted distinction is without foundation.  Without pausing to discuss or determine what would be the effect of an attempt by the city to open a street, under the power conferred by this paragraph of the statute, through depots, engine house and the like, it is sufficient to say, that the attempt here was simply to extend the streets across land devoted to railroad tracks.  The tracks upon the land sought to be taken, although some were devoted to the passage of passenger trains, others for the accommodation of freight traffic, and still others used for switching purposes and devoted to the storage of cars, were each ''railroad tracks,'' and it can not be important to what particular use the ''railroad tracks'' may be devoted.  By the express terms of the statute, power is given to the city authorities to extend streets, alleys and highways over and across the same.

The right of the legislature to exercise the power of eminent domain, and to invest the municipal authorities of the State with the power, and that it may extend to railroad property, is not questioned.  (Sec. 14, Art. 11, Const.; *E. St. L. C. R. Co.* v. *E. St. L. U. R. Co.,* 108 Ill. 265; *C. & A. R. Co.* v. *J. L. & A. R. Co.,* 105 id.

.389.) It will be unnecessary to determine the question, pressed upon us with so much force, that where both uses may not stand together, with such tolerable interference that compensation can be made by the payment of damages; that is, if the use of the land for a street, when exercised, will exclude the former use to which the land was appropriated, it can not be implied, from the general power to extend streets over and across rights-of-way, tracks and land, that the legislature meant to subject the land to the new public use to the exclusion of the prior public use. That is, it can not be implied, from the general language, that the legislature intended to destroy the prior use. True, as already said, the opening of the street would exclude from the tracks within the street the use of such tracks for the purpose of storing cars thereon. But it is manifest, that it is an interruption of the use only at the crossings, and if damages accrue because of the taking of that right, or the value of the property of the railway company not taken is decreased in value in consequence, adequate compensation can be made in the proceeding at law.

The decree of the Superior Court dismissing the bill will accordingly be affirmed.          *Decree affirmed.*