EUREKA & K. R. R. CO. v. CALIFORNIA & N. RY. CO.

(Circuit Court, N. D. California. August 20, 1900.)

No. 12,919.

1. FEDERAL COURTS—INJUNCTION STAYING PROCEEDINGS IN STATE COURT—JURISDICTION ON REMOVAL.

Rev. St. § 720, prohibiting a federal court from granting an injunction to stay proceedings in a state court, except in relation to bankruptcy matters, does not prevent the removal upon the usual grounds of a suit from a state court in which such an injunction has been granted; and in case of such removal, under section 4 of Act March 3, 1875, the injunction previously granted remains in force until dissolved or modified by the federal court.[1]

2. INJUNCTION—GROUNDS—PROCEEDINGS UNDER POWER OF EMINENT DOMAIN.

Where two railroad companies have each instituted proceedings for the condemnation of the same land for right of way under the California statute, which expressly authorizes the court in such proceedings to determine the respective rights of different parties seeking condemnation of the same property, a court of equity will not interfere by injunction in behalf of the party whose proceedings were first commenced, so long as the other conducts its proceedings in accordance with the statute, but will leave the rights of the parties to be determined by the special tribunal designated by law.

In Equity. Suit to restrain prosecution of actions in the state courts.

S. M. Buck and C. M. Wheeler, for plaintiff.
J. C. Campbell, for defendant.

MORROW, Circuit Judge. This action was brought in the superior court of the state of California for the county of Humboldt by the plaintiff, a California corporation, to enjoin the defendant, a corporation of the state of Nevada, from prosecuting certain condemnation suits in the state court. A temporary restraining order was granted as prayed for. The defendant demurred to the complaint, and at the same time filed a petition for removal of the cause to the federal court on the ground that the controversy was wholly between citizens of different states, and that the matter in dispute exceeded in value the jurisdictional sum. The petition was granted, and the case now comes before this court upon the order to show cause why an injunction should not issue as prayed for in the state court.

The plaintiff alleges that it was incorporated for the purpose of constructing and operating a line of railroad in the county of Humboldt, state of California, among other places, from the town of Arcata, around the east shore of Humboldt Bay, to the city of Eureka; that it has commenced the construction of said line of railroad, and has expended therein about $100,000, and will put said branch line in full operation within a year, unless prevented from so doing. It is alleged that a terminal site has been secured by the plaintiff in the city of Eureka at an expense of $60,000; that it is necessary, for the purpose of constructing its railroad to its said depot grounds upon its estab-

[1] Enjoining proceedings in state courts, see notes to Gardner v. Bank, 16 C. C. A. 90. and Trust Co. v. Grantham, 27 C. C. A. 575.

lished lines, to have a right of way over a certain parcel of land lying in the city of Eureka, and for the purpose of obtaining said right the plaintiff on June 30, 1899, commenced an action in the superior court of the state for the county of Humboldt to condemn the property required for said right of way. It is further alleged that during the pendency of said action the defendant, a corporation created for the purpose of constructing and operating a line of railroad from the city of Eureka to Crescent City, in Del Norte county, Cal., brought suits in the same court to condemn certain lands, including the identical parcel of land sought to be condemned by the plaintiff. Plaintiff charges that this action is fictitious and not prosecuted in good faith; that the defendant has not commenced the construction of its proposed line of railroad, and in the proceedings for condemnation has conspired with certain parties who are the owners of the land, for the purpose of hindering, delaying, obstructing, and preventing the plaintiff from completing its branch railroad; and irreparable damage to the plaintiff and loss of its franchise are alleged.

It is contended by the defendant that this court has no power or jurisdiction to enjoin the prosecution of actions commenced in the state court, under the inhibition contained in section 720 of the Revised Statutes. This section reads as follows:

"The writ of injunction shall not be granted by any court of the United States to stay proceedings in any court of a state, except in cases where such injunctions may be authorized by any law relating to proceedings in bankruptcy."

This prohibition is more particularly directed to cases where suit is instituted in the United States courts for the specific purpose of enjoining an action in the state court. But injunction proceedings commenced in the state court, and removed in the customary manner to the United States court by reason of some inherent right, are governed by the act of March 3, 1875, determining the jurisdiction of United States circuit courts over causes removed from state courts. Section 4 provides:

"That when any suit shall be removed from a state court to a circuit court of the United States, * * * all injunctions, orders, and other proceedings had in such suit prior to its removal, shall remain in full force and effect until dissolved or modified by the court to which such suit shall be so removed."

The relation of these two statutes to the interference by a United States court with proceedings in a state court is distinctly shown in the case of Bondurant v. Watson, 103 U. S. 281, 287, 26 L. Ed. 447. An injunction was issued by the state court, and the case was thereafter removed to the United States court by the defendant, and the injunction there made perpetual. The decree was appealed from, and claim was made that the case was not removable, because its purpose was to obtain the writ of injunction to stay proceedings in a state court, which a court of the United States is forbidden to grant, by section 720 of the Revised Statutes. The supreme court, speaking upon this contention, said:

"It is to be observed that the injunction had already been granted by the state court before the application for removal was made. The interest and

purpose of [the defendant], who asked for the removal, was to get the injunction dissolved. If [the plaintiff] had filed his petition for injunction in the state court, and, before it was allowed, had petitioned for a removal of the cause to the circuit court, with the design of applying to that court for his injunction, the objection to the right of removal would have force. That would have been an evasion of the statute. But that is not this case. The act of March 3, 1875, provides that all injunctions had in the suit before its removal shall remain in full force and effect until dissolved or modified by the court to which the suit shall be removed. It provides for removals, without making any exception, of cases in which an injunction has already been allowed to stay proceedings in a state court. It would not be according to the well-settled rules of statutory construction to import an exception into this statute from a prior one on a different subject."

A stricter interpretation of section 720 would defeat the purpose of the removal act in many instances, and deprive a party of a remedy in either court. Smith v. Schwed (C. C.) 6 Fed. 458; Perry v. Sharpe (C. C.) 8 Fed. 24.

This court, then, having power to consider the injunctional proceedings, the question arises, upon general principles of equity jurisprudence, should the injunction have been granted originally, and ought it now to be maintained? In this connection it is urged by counsel for defendant that it is not a case for equitable interference, for the reason that the plaintiff has a complete and adequate remedy at law. The plaintiff seeks to enjoin the defendant from prosecuting condemnation suits affecting the same parcel of land that the plaintiff is attempting to condemn, and the irreparable injury which the plaintiff claims it will suffer if denied a preventive remedy is the infringement upon and loss of its franchise in said city of Eureka, and consequent loss of the value of work and labor already performed in the construction of railroad along its proposed line. But will this result necessarily follow if the defendant is not restrained from the prosecution of its condemnation suits? The outcome of such suits feared by the plaintiff is that the defendant will obtain a decree adjudging that said parcel of land is necessary for a public use, and that defendant may hold and enjoy it for that purpose, to the exclusion of the plaintiff. The questions here presented are whether the plaintiff shall have the exclusive right to the land, or whether the defendant shall use it exclusively, or whether both parties may enjoy it as a public use. Such questions the state court is specifically empowered to determine in an action at law under the right of eminent domain. Section 1247 of the Code of Civil Procedure of the State of California provides that in condemnation proceedings the superior court shall have power:

"(1) To regulate and determine the place and manner of making connections and crossings, or of enjoying the common use mentioned in the fifth subdivision of section 1240. (2) To hear and determine all adverse or conflicting claims to the property sought to be condemned, and tax the damages therefor. (3) To determine the respective rights of different parties seeking condemnation of the same property."

Section 1240 of the same Code, referred to in subdivision 1, just quoted, in specifying the various kinds of property which may be taken for a public use under the right of eminent domain, includes:

"(5) All rights of way for any and all the purposes mentioned in section 1238, and any and all structures and improvements thereon, and the lands

held or used in connection therewith, shall be subject to be connected with, crossed, or intersected by any other right of way or improvements, or structures thereon. They shall also be subjected to a limited use, in common with the owner thereof, when necessary. But such uses, crossings, intersections, and connections shall be made in manner most compatible with the greatest public benefit and least private injury."

In the case of Western N. C. R. Co. v. Georgia & N. C. R. Co., 88 N. C. 79, the plaintiff was in a similar position to that of the plaintiff herein. It had surveyed and located a route through a certain locality, and claimed an inchoate prior right to construct a railroad thereon, the right to become perfect upon payment of damages to be assessed for appropriation of the land. The defendant had taken possession of a portion of the land traversed by the line of plaintiff's projected road, and claimed a right to locate its road thereon under a deed or license from the proprietor of the land. The plaintiff obtained a restraining order enjoining the defendant from interfering with the disputed territory until a hearing could be had, and later, numerous affidavits and evidence having been filed, the court directed an intermediate injunction to issue. From this ruling the defendant appealed. The supreme court of the state reversed the order issuing the injunction, and stated the following reasons:

"If the purpose of asking for the intermediate injunction is to obtain the opinion of the court upon the question of priority of right to lay the track upon and over the gap of the contesting companies, we should refrain from giving it, since the motion is heard upon ex parte evidence, without those safeguards which the law has provided, in requiring in most cases the personal presence of the witness, and affording in all opportunities for cross-examination,—conditions so important to the development of truth and determination of falsehood in trials before a jury, and under the rules that govern them. * * * The facts of the present application do not bring it within the principle upon which a court of equity acts in affording such relief, nor do they warrant our intervention in the controversy at this stage of its progress; and we leave it—where it should be left—to the determination of a jury."

In the case of East St. Louis Connecting Ry. Co. v. East St. Louis Union Ry. Co., 108 Ill. 265, 274, where franchises had been granted to two railway companies, of lines crossing each other, and somewhat interfering with the convenient operation of the plaintiff's road, it was held that legal damages, assessed as provided by law, would afford an adequate remedy, and that there was no ground for an injunction. And in East & W. R. Co. v. East Tennessee, V. & G. R. Co., 75 Ala. 275, 283, in a controversy between two railroad companies over a right of way, on appeal from a decree of injunction the court declared that it would not intervene to quiet titles, or to decide controversies as to the title; that other and more appropriate remedies and tribunals were provided for the determination of all such controversies. In Chicago & N. W. Ry. Co. v. City of Chicago, 151 Ill. 348, 37 N. E. 842, a railroad company had purchased a certain parcel of land in the city of Chicago, and used it for many years as a railroad yard, for the storing and switching of cars, the making up of trains, as well as for the transit of regular trains. The city proposed to open a street across this yard, and commenced condemnation proceedings for that purpose. The railroad company sought to enjoin this action

on the ground that the effect would be to deprive it of the special use to which it had put the land, and of its right and title therein. The title of the railroad company to the land was not in controversy, or the value of its use disputed. Yet the court denied the injunction, upon the ground that, even conceding that damages would accrue to the railroad company by the threatened action of the city, it would constitute no proper ground for the interposition of a court of equity; that if damages accrued because of the taking of the right, or the value of the property be decreased in consequence, adequate compensation could be made in the proceeding at law provided in such cases.

The procedure approved by the supreme court of this state is indicated in the case of Water Co. v. Cowles, 31 Cal. 215. Actions by different water companies were pending in the county court for the condemnation of the same lands. The court refused to proceed with one because of the pendency of the other. Application was made to the supreme court for a mandamus. In granting the application the court said:

"The condemnation of lands is but a purchase of them in invitum, and the title acquired is but a quitclaim. If a corporation starts proceedings under the statute, to get a title of that quality, after like proceedings for acquiring a like title have been commenced by another company, and there should be a condemnation and payment in both proceedings, both corporations would have good title as against the original owner or owners; but as between the companies the lands would belong to the one over whose proceedings the court first acquired jurisdiction.—a question to be litigated between the companies. It may be that either company might make the other a party defendant in its suit to condemn, or, failing that, that either of the companies might intervene in the proceedings of the other, so that the question of priority might be determined in advance of a purchase by either; but should the junior applicant, knowing all the facts, or having the means of knowing them, push its suit to a quitclaim, and voluntarily pay the purchase money, the responsibility would not be with the law."

The duty of courts of equity in issuing injunctions is clearly stated in the early case of Bonaparte v. Railroad Co., Fed. Cas. No. 1,617:

"The right must be clear, the injury impending or threatened, so as to be averted only by the protecting preventive process of injunction. * * * When there is a reasonable doubt whether the law set up as a justification authorizes the acts done, it [injunction] will not be granted (Field v. Jackson, 2 Dickens, 600; Agar v. Canal Co., Coop. 77); or if a discretionary power is given, which is not abused or misapplied, but exercised in good faith, sound discretion, and according to the best judgment of those to whom its execution is confided, the party complaining will be left to his remedy at law."

And further it is there declared that the conditions upon which the lawful exercise of the right of eminent domain depends are plainly defined, and the party seeking to use this privilege will not be interfered with by a court of equity so long as he keeps within the limits of those powers, and pursues the precise course laid down by the law.

In the case at bar the parties are seeking to condemn the same land for a right of way, and each seems to have taken the steps provided by law in such proceedings. The plaintiff's rights are not as yet established, other than by priority of action; and it is not shown by the bill of complaint that the defendant is going outside of the lines prescribed by law, or that the action threatened is without the limits of its powers under the right of eminent domain. From the authorities

cited, the conclusion to be drawn is that where proceedings to condemn private property for a public use are being conducted in accordance with the requirements of the statute conferring the authority, and there is no abuse or misapplication of such authority, a court of equity will leave the complaining party to the special tribunal designated by the law to decide all questions arising in its execution. In the light of this doctrine, it does not appear that the bill presents a state of facts warranting the interference of a court of equity. The temporary injunction will therefore be dissolved, and the bill dismissed for want of equity.